**Opinion filed January 18, 2024**



In The

# Eleventh Court of Appeals

_____

## No. 11-23-00283-CV

_____

## IN RE STEVE GERDES

**Original Mandamus Proceeding**

### M E M O R A N D U M   O P I N I O N

In this original mandamus proceeding, Relator, Steve Gerdes, asks us to order the City of Ranger to schedule a special election for the recall of city commissioners Kevan Moize and Samantha McGinnis. Although the city received recall petitions with the required number of signatures over 150 days ago, it has taken no action to schedule an election. Accordingly, we grant the petition for mandamus in part, ordering the city commissioners to proceed with the recall election.

*Factual and Procedural Background*

Respondent and Real Party in Interest Kevan Moize ran for mayor of the City of Ranger in 2023 and lost. Thereafter, he was appointed as a city commissioner to the seat that he now occupies.

Respondent and Real Party in Interest Samantha McGinnis is also a city commissioner. Her most recent candidacy was unopposed. As such, the city commission cancelled her election, and no votes were cast in her favor before she was seated as commissioner.

On August 11, 2023, Petitioner Steve Gerdes submitted two petitions to Somer Lee, the Ranger City Secretary, seeking the recall of Moize and McGinnis. Lee forwarded the petitions to the commissioners on the same day.[1]

The city charter requires the commissioners to schedule a recall election "not less than fifteen (15) days nor more than thirty (30) days" from the time the petition was presented to the city.[2] RANGER, TEX., CHARTER, art. II, § 24 (1919). However, more than five months have now elapsed, and the city has taken no action to schedule a recall election.

*Mandamus*

Mandamus is an "extraordinary" remedy that is "available only in limited circumstances." *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). Among other things, "a court of appeals may issue a writ of mandamus to compel the performance of any duty imposed by law in connection with the holding of an election." TEX. ELEC. CODE ANN. § 273.061(a) (West Supp. 2023). Generally, mandamus will lie where the duty to act is clear and there is no disputed issue of fact. *In re Suson*, 120 S.W.3d 477, 478 (Tex. App.—Corpus Christi–

---

[1] Lee sent letters to Gerdes on August 11 and August 16, respectively indicating that the Moize petition had been "rejected" and that the McGinnis petition did not contain "the number of signatures required by the Charter." However, after Gerdes filed a mandamus action against her in the district court, Lee admitted that she had, in fact, advised the commissioners that the petitions had been filed, per the requirements of the city charter. RANGER, TEX., CHARTER, art. II, § 24. As a result of this admission, the mandamus action in the district court was dismissed as moot.

[2] The charter provides that the recall election should take place if "the official whose removal is sought does not resign within five (5) days." RANGER, TEX., CHARTER, art. II, § 24. It is undisputed that neither Moize nor McGinnis have resigned in accordance with this provision.

Edinburg 2003, no pet.) (orig. proceeding)); *Burns v. Kelly*, 658 S.W.2d 731, 733 (Tex. App.—Fort Worth 1983, no writ) (orig. proceeding); *Blanchard v. Fulbright*, 633 S.W.2d 617, 621 (Tex. App.—Houston [14th Dist.] 1982, writ dism'd) (orig. proceeding). As such, the central question before us is whether the city commissioners of Ranger, who are respondents herein, are under a clear duty to schedule a recall election.

The commissioners argue that they are under no duty to schedule a recall election, offering two justifications for their failure to act.

*The One-Fifth Certification Requirement*

First, the commissioners assert that they have no duty to schedule a recall election based on their unilateral determination that the petitions are defective. Specifically, they point out that the city charter requires one-fifth of the voters who sign the petition to certify that "at the election at which the officer . . . was . . . elected, they voted for the election of such officer." RANGER, TEX., CHARTER, art. II, § 24. They then assert that they have examined the petitions and concluded that neither contains the required number of certifications. Based on this "examination" of the petitions, they have determined that they are neither allowed nor required to order a recall under the terms of the charter. However, by determining that Moize and McGinnis are not and (by implication) cannot be subject to recall, the commissioners have misconstrued their role and responsibilities in the process.

Our sister courts of appeals have consistently held that, absent charter provisions that expressly state otherwise, city commissioners and other city officials have no right or authority to refuse a recall petition based on their own findings that the petition is defective. *Duffy v. Branch*, 828 S.W.2d 211, 212–13 (Tex. App.—Dallas 1992, no writ) (orig. proceeding) (provision that council "must order a recall election" was mandatory and was a purely ministerial duty, allowing no discretion);

3

*Burns*, 658 S.W.2d at 734 ("Just as we found that the city charter contains no provision authorizing the city council (or the city secretary or anyone else) to examine the signatures, etc., for authenticity, we also find no authority in the city charter for a determination by the city council of the sufficiency of the charges contained in the petition."); *Blanchard*, 633 S.W.2d at 622 ("The city council or other city official has no such right or authority of discretionary review absent a charter provision reserving such right and authority."); *Howard v. Clack*, 589 S.W.2d 748, 751 (Tex. App.—Dallas 1979, no writ) (orig. proceeding) ( finding no "implied authority for the council to make its own investigation and determination of the sufficiency of the petition."); *see In re Lee*, 412 S.W.3d 23, 27 (Tex. App.—Austin 2013, no pet.) (orig. proceeding) (citing *Blanchard*, and holding that charter was too ambiguous to vest the city secretary or council with the authority to determine the sufficiency of the allegations against the council members in the recall petition); *Suson*, 120 S.W.3d at 480 ("We cannot infer from this language that the city secretary or the city commissioners have a right or duty to examine the sufficiency of the petitions.").

The Ranger city charter provides that, after receipt of the petition, "the governing authority of the city *shall* thereupon order and fix a day for holding a recall election." RANGER, TEX., CHARTER, art. II, § 24 (emphasis added). It does not vest in the commissioners the duty, right, or authority to conduct a review of the petition to determine whether it is sufficient to satisfy the terms of the charter. *Id.*

Like our sister courts, we are reluctant to imply any degree of discretion on the part of the commissioners under the terms of the charter. Otherwise, the fox guards the henhouse. As the Dallas Court of Appeals observed in *Howard*:

> [T]o imply authority on the part of the council to make the ultimate determination of sufficiency of the petition would commit the decision to a body that could not be considered impartial. Every recall petition

4

affects at least one of the council members directly, and contemporaneous petitions with respect to other members might well affect a majority, or, indeed, all members of the council. In that situation, each member of the council would be called on to vote on the sufficiency of petitions calling for recall of other members.

589 S.W.2d at 752.

The commissioners argue that they are merely engaged in the act of counting certifications in the petitions, an act that does not involve the use of "unauthorized discretion." However, in this instance, neither Moize nor McGinnis were elected to the seats that they currently hold, and it is therefore *impossible* for the petitions to contain the certifications described in the charter.[3] Implied within the commissioners' decision to "count" certifications is a much more central (and critical) determination: that, by virtue of occupying seats to which they were never elected, Moize and McGinnis are effectively immune to recall under the terms of the charter. In reaching this conclusion, the commissioners are not merely "counting," they also engaged in an act of construction.[4] We have examined the recall provisions in the charter and conclude that the commissioners are given no discretion to construe or interpret the charter prior to ordering the recall.

---

[3]The petitions each contained a column in which a signatory could certify that they voted for either Moize or McGinnis, respectively, in the last election. Of the ninety-two people who signed the petition to recall Moize, only one appears to have certified that they voted for Moize in the last regular election. Another seven attempts at certification appear to be crossed out, although it is not clear when and why those certifications were removed. Of the ninety-one people who signed the petition to recall McGinnis, eight appear to have certified that they voted for her in the last general election, although several attempts at certification are again crossed out.

[4]Although it is not necessary for us to reach the issue, we find the commissioners' self-serving construction of the charter to be questionable. The charter provides that any "elective officer" (defined as including the mayor and commissioners) "shall be subject to recall." RANGER, TEX., CHARTER, art. II, § 24, art. V, §§ 1, 5. Like all other recall provisions, this clause "should be liberally construed in favor of the power reserved." *In re Woodfill*, 470 S.W.3d 473, 480 (Tex. 2015) (quoting *Taxpayers' Ass'n of Harris Cnty. v. City of Houston*, 105 S.W.2d 655, 657 (1937)). As such, it is likely that the one-fifth certification requirement is inapplicable when, as here, commissioners occupy seats to which they were not elected.

If the commissioners were concerned that the petitions were defective under the terms of the charter, they could have scheduled the recall election within the timeframe required by the charter while simultaneously seeking declaratory relief in the district court. *See Blanchard*, 633 S.W.2d at 622 ("In the absence of any such charter provision giving the discretionary right to determine the sufficiency of the petitions, we believe due process gives the respondents the right to file a suit in the District Court naming and citing interested parties and thereby obtaining a judicial determination of sufficiency of the petitions in an adversary proceeding after proper notice of hearing."); *see also Duffy*, 828 S.W.2d at 214. However, they cannot choose to do nothing based on their own unilateral construction of the charter.

*The Election Code*

As a second justification for failing to act on the petitions, the commissioners assert that they are unable to schedule a recall election as a result of restrictions that are imposed on them by state law.

In support of this justification, the commissioners assert that the charter's provisions regarding the timing of the election are preempted by the Texas Election Code, which requires all general and special elections to take place on one of two annual uniform election dates. *See* ELEC. § 41.001(a). "General elections" are elections, other than primary elections, that occur on fixed dates. ELEC. § 1.005(6). "Special elections" are any elections that are not general or primary elections. *Id.* § 1.005(18). Recall elections qualify as special elections and are therefore subject to the uniform election date requirements. *Burns*, 658 S.W.2d at 734.

The commissioners argue that the seats that are occupied by Moize and McGinnis are already up for reelection at the time of the next general election, which will take place in May 2024. As such, they reason, there would be no point in holding a recall election at that time.

6

The commissioners acknowledge that the uniform election requirements in section 41.001(a) do not apply to court-ordered elections, and that we therefore have the authority to order a recall election outside of a uniform date. ELEC. § 41.001(b)(3). However, they argue that Gerdes must still present a compelling case for the court to ignore the requirements of the Election Code, and that he has failed to do so. We disagree.

The next general election date following the submission of the petitions was November 7, 2023. *See* ELEC. § 41.001(a)(3) (establishing a uniform election date on "the first Tuesday after the first Monday in November"). In that regard, the commissioners could have ordered a November 7 recall election as late as August 21, 2023. *See* ELEC. § 3.005(c) (elections should be ordered not later than the seventy-eighth day before election day). Had the commissioners promptly acted on the petitions that were submitted by Gerdes, the recall election could have been held on November 7, 2023, if not sooner.[5] As such, we conclude that the commissioners have unnecessarily delayed the election, and that Gerdes has laid out a clear and compelling argument for the court to order a recall election prior to the next uniform election date. *See In re Johnson*, No. 10-14-00341-CV, 2015 WL 505220, at *2 (Tex. App.—Waco Feb. 2, 2015, no pet.) (mem. op.) (orig. proceeding) (because election not scheduled on uniform election date as a result of delay by city council, "the recall election should not be further delayed" by holding it on the next uniform election date); *Blanchard*, 633 S.W.2d at 625 (following delay by city council based on alleged insufficiency of recall petition, election ordered to take place "not less than twenty-five days nor more than thirty-five days from the

---

[5]We do not pass on the question of whether the election date should have been determined by the terms of the charter or the terms of the Election Code. Likewise, although we believe there is a compelling reason for us to act in this instance, we do not comment on the commissioners' assertion that Gerdes is required to offer an "analysis or rationale for ignoring [the] mandatory sections of the Election Code" before we can order an election outside of a uniform date.

date the judgment of this court became final," consistent with requirements in city charter).

*Eastland County Judge David Hullum is Not a Necessary Party*

The charter provides that, where the city fails to receive the recall petition, order the election, or discharge other related duties, "the County Judge of Eastland County, Texas, shall discharge any such duties." RANGER, TEX., CHARTER, art. II, § 24. As a result of this provision, Gerdes has named Eastland County Judge David Hullum as a respondent.

Provisions such as this, which require a county judge to compel a recall election in the event the city government fails to act, appear in several charters throughout the state. *See Blanchard*, 633 S.W.2d at 624 (Angleton charter requiring county judge to compel recall election if city government fails or refuses to act); *Duffy*, 828 S.W.2d at 213 (Addision charter required county judge to order a recall election); *Burns*, 658 S.W.2d at 733 (county judge asked to call a recall election "in compliance with" the Colleyville charter). And like the courts in *Blanchard* and *Duffy*, we question whether there is any constitutional or statutory authority that permits the City of Ranger to impose a duty on the Eastland County Judge to order an election. *Blanchard*, 633 S.W.2d at 624; *Duffy*, 828 S.W.2d at 213; *see also* Tex. Att'y Gen. Op. No. GA-0870 (2011) ("Texas law does not authorize a county judge to order a special municipal recall election."). Nevertheless, because we can afford full relief to Gerdes by ordering the commissioners to proceed with the recall election, we find it unnecessary to reach the question of whether Judge Hullum is compelled to act in this situation.

*This Court's Ruling*

We grant the petition for writ of mandamus as to the Ranger city commissioners and deny the petition with respect to Judge Hullum. The Ranger city

8

commissioners (respondents Terry Robinson, Joe Sigler, Kevan Moize, Wendy Erwin, and Samantha McGinnis) are directed to schedule a special election for the recall of commissioners Moize and McGinnis not less than fifteen days and not more than thirty days from the date of this opinion.

JOHN M. BAILEY

CHIEF JUSTICE

January 18, 2024

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.